IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HEALTH AND WELLNESS LIFESTYLE CLUBS, LLC, | : | Case No. 1:17CV2189 |
| | : | |
| Plaintiff/Counter-Defendant, | : | |
| | : | Judge John R. Adams |
| v. | : | |
| | : | |
| RAINTREE GOLF, LLC, et al., | : | **ORDER AND DECISION** |
| | : | |
| Defendants/Third-Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| NUPUR NAGAR, et al. | : | |
| | : | |
| Third-Party Defendants. | : | |

Defendants Raintree Golf, LLC ("Raintree LLC") and John Rainieri ("Rainieri") (collectively, the "Raintree Defendants") have moved this Court for partial summary judgment in their favor and against Plaintiff Health and Wellness Lifestyle Clubs, LLC ("HWLC" or "Plaintiff") on Count One of HWLC's Complaint and Count One of the Raintree Defendants' Counterclaim. The Raintree Defendants argue that at least three reasons warrant summary judgment in their favor on HWLC's breach of contract claim. They first argue that the purchase agreements under which HWLC alleges a right to purchase the golf courses at issue were expressly conditioned upon HWLC first obtaining and delivering written unconditional commitments for third-party financing, and that the parties' agreements were terminated because the financing was never obtained. Second, the Raintree Defendants argue that HWLC's claims are expressly foreclosed by the terms of the agreements HWLC seeks to enforce. Third, the

Raintree Defendants contend that HWLC's request for specific performance of the Raintree sale is unsupported as a remedy.

Regarding the Raintree Defendants' Counterclaim, the Raintree Defendants argue that they are not under any obligation to sell either golf course to HWLC because the parties' agreements have expired. As such, the Raintree Defendants claim entitlement to declaratory judgment in their favor.

HWLC has responded to the motion for partial summary judgment, and the Raintree Defendants have replied. Accordingly, the motion is ripe for decision.

Having reviewed the evidence and the parties' arguments, the Court finds that HWLC has failed to conjure any genuine issue of material fact for a jury to decide on either Count One of its Complaint or Count One of the Raintree Defendants' Counterclaim. Accordingly, the Raintree Defendants' motion for partial summary judgment (Doc. 36) is GRANTED. The Court's reasoning follows.

## I.    FACTUAL BACKGROUND

On July 17, 2015, HWLC submitted a letter of intent to Rainieri, "as Owner of Raintree and Prestwick Golf course and all assets and operations of the respective courses," regarding HWLC's interest in purchasing two golf courses/country clubs in Uniontown, Ohio, known as Prestwick Country Club ("Prestwick") and Raintree Country Club ("Raintree"). (Rainieri Dec. at ¶ 4; Compl. at Ex. 2 at 16.) In the letter of intent, HWLC states that a condition of sale is that HWLC obtains a "written commitment or commitments" for "third-party financing." (Compl. at Ex. 2 at 7.)

On or about August 24, 2015, HWLC entered into two separate purchase agreements, one for the purchase of Prestwick by HWLC, (the "Original Prestwick Agreement") and one for the purchase of Raintree by HWLC (the "Original Raintree Agreement") (collectively, the Original

Prestwick Agreement and Original Raintree Agreement are referred to as the "Original Purchase Agreements"). (Rainieri Dec. at ¶ 5.)

The Original Purchase Agreements were expressly conditioned upon HWLC obtaining written unconditional commitment(s) for third-party financing. For example, the Original Prestwick Agreement states:

> [T]his Agreement for Sale and Purchase of the property is contingent upon Purchaser's obtaining and delivering to Seller a written unconditional commitment or commitments as the case may be (the "Commitment") for the third party financing (third party financing is defined as financing obtained from other sources other than Seller financing) and the release of such funds into Escrow.

(Rainieri Dec. at Ex. A at 21–22; *see also* Rainieri Dec. at Ex. B at 20–21.)

In connection with entering the Original Purchase Agreements, HWLC sent an accountant to Raintree and Prestwick to review the financial records. (Rainieri Dec. at ¶ 6.) The accountant chosen by HWLC reviewed such records for nearly a month. (*Id.*) Thereafter, HWLC represented numerous times to the Raintree Defendants that HWLC had third-party lenders interested in financing the transactions. (*Id.* at ¶ 7.) However, HWLC did not provide proof of unconditional commitment(s) of third-party financing, and the purchases of the two golf clubs did not close according to the deadlines set forth in the Original Purchase Agreements. (*Id.*)

After the Original Purchase Agreements did not close, amendments (the "Amendments") were executed to each of the Original Purchase Agreements to extend the closing deadlines. (*Id.* at ¶ 8.) The Amendments are comprised of an amended agreement for Prestwick (the "Prestwick Amendment") and an amended agreement for Raintree (the "Raintree Amendment").

Pursuant to the Prestwick Amendment, the parties agreed as follows: (1) for the Prestwick transaction, the "escrow period is extended through September 30, 2016 with an automatic additional 90 day extension to **December 31, 2016** to allow Purchaser an additional extension for closing the transaction"; (2) "Purchaser reserves the right to purchase Prestwick property first and close this property transaction first and then Purchase and Close Raintree property by December 31, 2016"; (3) if HLWC exercises its right to close on the Prestwick sale by December 31, 2016, HWLC has "a right to seek two extensions" and "close Raintree by December 31, 2017"; and (4) "**Failure to close Prestwick shall negate any rights that Purchaser has to purchase Raintree Golf Course as stated herein**." (Rainieri Dec. at Ex. C at 2, emphasis added.)

The details of the potential extensions for the purchase of Raintree are set forth in the Raintree Amendment, which pertinently provides that if the sale of Raintree did not close by December 31, 2016, HWLC "has a right to seek a first extension, a period of six months starting from January 1, 2017 to June 30, 2017" to close Raintree by providing notice to Seller and depositing $50,000 into escrow as a non-refundable deposit. (Rainieri Dec. at Ex. D at 2.) Then, if HWLC is still not able to close the sale of Raintree by June 30, 2017, HWLC has the "right to seek a second extension starting from July 1, 2017 through December 31, 2017," again by notifying Seller and depositing an additional $50,000 into escrow. (*Id.*)

Taken together, the Amendments provide that if the sale of Prestwick closed by the extended closing deadline of December 31, 2016, then HWLC would have the right to seek up to two extensions to close on Raintree, such that if both extensions were elected and the additional escrow funds deposited, the latest the closing would occur would be December 31, 2017.

4

However, if HWLC failed to close on Prestwick by December 31, 2016, such failure "***shall negate any rights that Purchaser has to purchase Raintree***." (Rainieri Dec. at Ex. C at 2, emphasis added.)

The Amendments also note that "[e]xcept as specifically modified and amended herein, all of the terms, provisions, requirements and specifications contained in the [Original Purchase Agreements] remain in full force and effect." (Rainieri Dec. at Ex. C at 1; Rainieri Dec. at Ex. D at 2.) Nothing in the Amendments changed HWLC's obligation to provide unconditional commitment(s) for third-party financing as conditions precedent to closing. And, HWLC did ***not*** provide unconditional commitment(s) for third-party financing to the Raintree Defendants to close Prestwick by December 31, 2016, and the sale of Prestwick did not close by that extended closing deadline. (Rainieri Dec. at ¶ 9.)

On or about February 23, 2017, because the sale of Prestwick had not closed by December 31, 2016 deadline, the Raintree Defendants, through counsel, informed HWLC that the Raintree Defendants are "not going to enter into any written extension of the transaction." (*Id.* at ¶ 10, Ex. E.) In response, on or about February 27, 2017, HWLC wrote back, stating that it deemed the Raintree Defendants' communication a "***Notice to Terminate the transactions***" (and also referred to it as a "Notice to Cancel"), and stated that both transactions "***will now proceed to Termination***." (*Id.* at ¶ 11, Ex. F, emphasis added.)

Included in HWLC's termination acknowledgment was a copy of a Conditional Approval Letter ("CAL"), dated February 17, 2017, from a lender regarding HWLC's application for financing to purchase Prestwick. (*Id.* at ¶ 12.) As its name suggests, the CAL was "conditional," as it is expressly described as a "conditional commitment letter" (s*ee, e.g.*, Rainieri Dec. at Ex. G at 1, 8), and contained the following language:

5

> **Conditional Approval:**
> As mentioned above, the Loan Committee has given only its
> conditional approval of the Loan. It is important that you
> understand that **American Business Lending, Inc. will have no
> obligation to advance any funds whatsoever until
> all information required is reviewed and approved by ABL.**
> ABL, at its sole discretion, will provide final approval or withhold
> final approval based on the items and information referred to above
> in this letter and in the final Authorization and Loan Agreements.
> However, any changes requested by the applicant, must also be
> approved by the Loan Committee prior to any disbursement. In
> addition, the SBA must approve its guarantee of 75% of the
> gross proceeds of the Loan under the Section 7(a) Loan Guarantee
> Program. It is understood that terms and conditions of the Loan
> may be adjusted to satisfy the requirements and suggestions of the
> SBA. *Borrower understands that it should not enter into any
> contracts based upon SBA approval prior to loan closing and
> that this Conditional Approval is not to be relied upon by any
> third party.*

(*Id.* at 10, final emphasis added.) It also contained numerous contingencies, including but not

limited to: (1) submission of evidence that HWLC has contributed equity capital of $1,135,200

(*Id.* at 2); (2) appraisal satisfactory to the lender for no less than $4,525,892 (*Id.* at 4); (3)

"Provide a new purchase contract or addendum to existing contract removing the contingency for

the buyer to also purchase Raintree Golf Course and Country Club from the seller within 12 to

18 months" (*Id.* at 5); (4) purchase of or assignment of various types of insurance (*Id.* at 4, 7); (5)

proof that HWLC's member, Nupur Nagar, has paid off certain credit card accounts (*Id.* at 7);

and (6) compliance with SBA requirements for environmental issues (*Id.* at 6).

The CAL, as suggested by its date of February 17, 2017, was not provided to the Raintree

Defendants until after the extended deadline to close the Prestwick sale (December 31, 2016),

and even if it had been timely, it was not an unconditional commitment for financing, as required

by the parties' prior agreement. Additionally, in its acknowledgment of termination, HWLC

asked the Raintree Defendants "not to contact the lender as this transaction is considered

terminated." (Rainieri Dec. at ¶ 11, Ex. F.)

After further correspondence and discussions, one final extension was signed (the "Final Prestwick Extension"). (Rainieri Dec. at ¶ 13.) The Final Prestwick Extension only concerned the Prestwick golf course and was signed only on behalf of "John Rainieri dba Prestwick Golf Club."   Nothing in the Final Prestwick Extension mentions or concerns Raintree, and ***no similar extension was entered into for the sale of Raintree***. (Rainieri Dec. at ¶ 13.)   Notwithstanding, HWLC again failed to provide proof of unconditional financing for the sale of Prestwick, and the sale of Prestwick did not close by the May 31, 2017 deadline set forth in the Final Prestwick Extension. (*Id.* at ¶ 14.)

On October 17, 2017, after all of the deadlines for HWLC to purchase Prestwick or Raintree had expired, HWLC filed its Complaint. In Count One of its Complaint, HWLC alleges breach of contract, breach of warranty, and breach of the covenants of good faith and fair dealing, all premised on the alleged existence of a "contract between the parties." (Compl. at ¶¶ 45–46.)

The Raintree Defendants filed their Answer, Counterclaim, and Third-Party Complaint on December 15, 2017. In so doing, the Raintree Defendants brought a Counterclaim against HWLC seeking declaratory judgment that no contract currently exists between the Raintree Defendants and HWLC, and that the Raintree Defendants are under no obligation to sell either golf course to HWLC. (Countercl. at ¶¶ 27–31.)

Since the filing of the initial pleadings, this Court has conducted numerous conferences to explore the possibilities of resolving this case. During the most recent conference on May 22, 2018, this Court instructed HWLC to provide a written commitment from a lender to purchase Raintree, with specific details of such approval for financing, to be submitted to the Raintree

Defendants and to the Court no later than June 5, 2018, and if such was not provided, then the Raintree Defendants would have fourteen days thereafter to file a motion for summary judgment.

On June 4, 2018, HWLC's counsel provided the Raintree Defendants' counsel with two partially redacted letters from what appear to be financial institutions. (Rainieri Dec. Ex. I, J.) The letters merely indicate a ***potential*** interest in providing financing for a purchase price for Raintree of hundreds-of-thousands of dollars ***less*** than the contract price.

The Raintree Defendants now have moved for partial summary judgment. The Court turns to the merits of that motion.

## II.     <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment may satisfy its burden under Rule 56 in either of two ways: (1) "submit affirmative evidence that negates an essential element of the nonmoving party's claim," or (2) "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Id.* Likewise, the moving party's burden of production "may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In reviewing summary judgment motions, this Court must view the evidence in a light

most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

The Court now turns to the merits of the Raintree Defendants' motion for partial judgment motion. Applying the Rule 56 standard articulated above, the Court finds that no genuine issue of material fact remains for a jury to decide, such that partial summary judgment is appropriate.

### III.  DISCUSSION

The Raintree Defendants argue that, regardless of which contract is relied upon – the Original Purchase Agreements, the Amendments, or the Final Prestwick Extension – HWLC cannot succeed on its breach of contract claim.   The Court agrees, for several reasons.   First and foremost, the purchase agreements were expressly conditioned upon HWLC providing unconditional commitment(s) for financing, and no such commitment(s) were ever provided.   Second, all of the closing deadlines have now expired, and the parties' agreements have terminated.   Third, there was no "breach" by the Raintree Defendants as alleged by HWLC.   Fourth, HWLC is not entitled to the relief of specific performance that it requests.

As an initial matter, HWLC failed to provide any evidence of unconditional financing, thus failing to meet an express condition of the contracts. The Original Purchase Agreements expressly state that they are conditional upon HWLC obtaining and delivering financing. For example, the Section 4.1(b)(2) of the Raintree Original Agreement states, in relevant part:

> This Agreement for Sale and Purchase of the property is
> ***contingent upon Purchaser's obtaining and delivering to***
> ***Seller a written unconditional commitment or***
> ***commitments*** as the case may be (the "Commitment") for
> the third party financing (third party financing is defined as
> financing obtained from other sources other than Seller
> financing) and the release of such funds into Escrow.

(Rainieri Dec. at Ex. B at 20–21, emphasis added; *see also* Rainieri Dec. at Ex. A at 21–22.)

As a further example, the Raintree Original Agreement also states as follows:

> The ***obligation of Seller to consummate the transactions***
> hereunder in respect of the Property other than the Liquor Assets
> ***shall be subject to the fulfillment on or before the date of Closing***
> ***of all of the following conditions***, any or all of which
> may be waived in writing by Seller in its sole discretion:
> . . .
> (d) ***Purchaser shall have performed and observed, in all material***

10

> *respects, all covenants and agreements of this Agreement to be performed and observed by Purchaser as of the date of Closing*.

(Rainieri Dec. at Ex. B at 43–44, emphases added; *see also* Rainieri Dec. at Ex. A at 44–45.) Thus, the Seller was not obligated to sell the golf courses to HWLC unless HWLC first performed its obligations, including obtaining and delivering written unconditional commitment(s) for financing. Indeed, HWLC admits as much, stating in its Complaint that closing the transactions was "subject to financing." (Compl. at ¶ 11.)

At no time prior to the closing date of the Original Purchase Agreements did HWLC deliver proof of an "unconditional commitment or commitments" for financing required by Section 4.1(b)(2) of the Original Purchase Agreements. (Rainieri Dec. at ¶ 7.) Nor was such proof provided during the periods for closing as extended by the respective Amendments. (*Id.* at ¶ 9.) At best, in its Complaint HWLC alleges that it received a "letter of interest" from a lender (for Prestwick only) on or about February 23, 2016. (Compl. at ¶ 18.) Notably, the alleged "letter of interest" is not attached to the Complaint. HWLC's reference to a "letter of interest" falls far short of the requirements that HWLC "*obtain*" and "*deliver*" "to Seller a written *unconditional* commitment or commitments" as required by the Original Purchase Agreements. Nor was such proof provided during the period for closing on the Prestwick sale through the Final Prestwick Extension's date of May 31, 2017. Instead, the February 17, 2017 CAL provided to the Raintree Defendants stated, without limitation:

> **Conditional Approval:**
>
> As mentioned above, the Loan Committee has given only its conditional approval of the Loan. It is important that you understand that **American Business Lending, Inc. will have no obligation to advance any funds whatsoever until all information required is reviewed and approved**

**by ABL. . . . *Borrower understands that it should not enter into any contracts based upon SBA approval prior to loan closing and that this Conditional Approval is not to be relied upon by any third party.***

(Rainieri Dec. at Ex. G at 10, final emphasis added.) Again, the CAL fell far short of being an unconditional commitment for financing, as required by the parties' prior agreement. Thus, an express contingency under the agreements HWLC seeks to enforce — HWLC's obtaining and delivering an unconditional financing commitment — was not satisfied, thereby excusing any obligation of the Raintree Defendants to complete the sale of either course to HWLC. In sum, the agreements required HWLC to obtain and deliver written unconditional commitments for financing, HWLC failed to provide such written unconditional commitments, and HWLC's claim fails.

It should be noted that HWLC's failure to satisfy an express condition of the contracts has continued throughout this litigation. As shown in the letters submitted to the Raintree Defendants by HWLC on June 4, 2018, HWLC has continued to fail to acquire unconditional commitments for financing. The May 29, 2018 letter is titled "Re: Letter of Interest/Term Sheet," and states that "the Bank is interested in pursuing your loan and is pleased to provide you with this financing estimate below, subject to compliance with, and satisfaction of [multiple terms and conditions]." The May 25, 2018 letter is clearly a "proposal" and "requires formal underwriting and approval before a conditional term sheet can be issued[.]" Very clearly HWLC has not shown proof that it has obtained any unconditional promises of financing.

The Raintree Defendants' obligation to sell the golf courses to HWLC was specifically conditioned on HWLC first providing a "written unconditional commitment or commitments as the case may be" of third-party financing. (Partial MSJ at 10–11.) Because HWLC did not

provide any written unconditional commitment(s) for financing prior to the closing deadlines, the transactions *did not close*, and the Raintree Defendants had no obligation to sell either golf course to HWLC. (*Id.* at 11–13.)

In response, HWLC does not provide proof of delivery of a "written unconditional commitment" for financing. Instead, HWLC alleges that the Raintree Defendants' transactional attorney "swore under oath in Court that the 'approved financing' had been provided" in May 2016. (Pl. Resp. at 7.) However, HWLC does not quote the language used in the affidavit and, indeed, mischaracterizes it. The affidavit states, in relevant part:

> Dr. Sujata Vyas entered into a contract to purchase real estate where I was and am attorney representing the seller on the purchase transaction. The contract was entered into fall of 2015. Thereafter, escrow was opened to complete the purchase. On May 4, 2016, approval for financing was obtained by a lender.
> . . .
> On February 17, 2017 lender provided an updated approval letter and on May 18, 2017, an extension to allow completion of escrow conditions.

(Sicuro Aff., Doc. No. 43-7 at 1, ¶¶ 3, 5.) The affidavit does not state that "written unconditional commitment or commitments" were provided by HWLC to the Raintree Defendants, as required by the language of the contracts. It also does not state, as claimed by HWLC, that the Raintree Defendants "received confirmation of financing" or "received the evidence of financing in 2016." (Pl. Resp. at 8.) Instead, it simply recites what the Raintree Defendants had been repeatedly told by HWLC — that HWLC had "approval for financing."

The alleged "approval" referred to in the affidavit was "updated" via the February 17, 2017 CAL, which the Raintree Defendants addressed in their Partial MSJ. (Partial MSJ at 4–5.) The CAL was just that: conditional. It was replete with

contingencies and was not an "unconditional commitment" of financing, as required by the contract. (*Id.*) And, importantly, the February 17, 2017 CAL explicitly states that it "replaces the previously issued CAL dated May 4, 2016." (Feb. 17, 2017 CAL, Doc. No. 36-8 at 1.)

The May 4, 2016 CAL is also replete with contingencies and is explicitly "conditional." (*See, e.g.*, Nagar Dec., Doc. No. 44-4 at PageID# 1287, " . . . the Loan Committee has given only its conditional approval of the Loan.") Thus, the May 4, 2016 CAL also fails to be an "unconditional commitment" of financing, and HWLC's reliance on the Sicuro Affidavit as proof of unconditional financing is misplaced.

HWLC also claims that it "had the ability to self-finance the sale and did not need a lender." (Pl. Resp. at 10.) HWLC alleges that such ability "was communicated to Defendants," but provides no evidence to substantiate its claim. (*Id.* at 2.) HWLC cites the Vyas declaration, but it does not contain any statement that HWLC communicated anything about self-financing to the Raintree Defendants at any time. (*See* Vyas Dec., Doc. No. 44-2.) The current claimed ability to self-finance the purchase does not change the requirement that HWLC provide to the Raintree Defendants a "written unconditional commitment" of financing, and there is no evidence that HWLC provided a "written unconditional commitment" that it could self-finance the deal at any time prior to the agreed closing dates.

Furthermore, the self-financing now alleged by HWLC is hardly unconditional. The Vyas documents only show that she had certain funds in retirement accounts for the second half of 2017 and the first portion of 2018, and that she applied for an Extension of Credit. (*See id.* at 4–16.) They do not even suggest a commitment for financing the two golf course purchases.

Next, HWLC argues that, because "Section 4.1(b)(2) of the Agreement states that HW[LC] may provide an unconditional commitment or, 'commitments as the case may be,'"

HWLC was not required to provide an unconditional commitment, but rather "[a]ny commitment sufficed." (Pl. Resp. at 11.) Such an argument is too strained. The clause at issue states:

> [T]his Agreement for Sale and Purchase of the property is contingent upon Purchaser's obtaining and delivering to Seller **a written unconditional commitment or commitments as the case may be (the "Commitment")** for third party financing (third party financing is defined as financing obtained from other sources other than Seller financing) and the release of such funds into Escrow.

(*See, e.g.*, Original Prestwick Agreement, Doc. No. 36-2 at 21–22, emphasis added.) A straightforward reading of the clause shows that its use of "commitment or commitments" simply contrasts the singular versus the plural. It is not, as HWLC argues, a suggestion that if HWLC obtains and delivers a single commitment for financing, it must be unconditional, but if HWLC obtains and delivers multiple commitments, they do not have to be unconditional. Such an interpretation is nonsensical.

Finally, HWLC claims that if there was a failure of a condition precedent to prove financing, then the Raintree Defendants "caused any such failure." (Pl. Resp. at 11.) As set forth in the Raintree Defendants' opposition to HWLC's Fed. R. Civ. P. 56(d) motion, and further explained below, HWLC's argument fails. (*See* Doc. No. 42 at 6–8.)

The condition precedent is for HWLC to obtain and deliver written unconditional commitment(s) for financing. HWLC alleges that the Raintree Defendants "acted in bad faith in failing to disclose overall poor financial condition of the golf courses." (Pl. Resp. at 12.) The conduct of the Raintree Defendants in allegedly overstating the value did not prevent the condition precedent from occurring. Under HWLC's argument, had the Raintree Defendants disclosed the alleged "overall poor financial condition," lenders would ***not*** have approved the financing; yet, if HWLC failed to obtain financing under the alleged "overstated" value of

Prestwick, then the same failure would result if the "poor financial condition" was disclosed. Thus, under the authority cited by HWLC, the Raintree Defendants did not contribute materially to the non-performance of the condition precedent, and HWLC's argument fails. Restatement (Second) of Contracts § 245, cmt. (b) ("[I]f it can be shown that the condition would not have occurred regardless of the lack of cooperation, the failure of performance did not contribute materially to its non-occurrence and the rule does not apply.").

Ultimately, HWLC has not provided any evidence that it satisfied the contractual condition precedent of obtaining and delivering to the Raintree Defendants written unconditional commitment(s) of financing, and summary judgment is warranted on the breach of contract claim.

Summary judgment is also warranted because all of the closing deadlines have now expired. (Partial MSJ at 13–14.) Specifically, when the closing deadlines in the Original Purchase Agreements expired, the parties executed the Amendments in July 2016. (*Id.* at 2.) Pursuant to the Prestwick Amendment, the parties agreed to extend the closing deadline for Prestwick until December 31, 2016, and that "[f]ailure to close Prestwick shall negate any rights that Purchaser has to purchase Raintree Golf Course as stated herein." (*Id.* at 3.) Pursuant to the Raintree Amendment, if the sale of Raintree did not close by December 31, 2016, then HWLC could seek two, six-month extensions (*i.e.* twelve months) to close Raintree, each time depositing $50,000.00 into escrow as a non-refundable deposit. (*Id.*) Then, after the closing deadline for Prestwick of December 31, 2016 elapsed, and after HWLC acknowledged termination of the deal on February 27, 2017, the Final Prestwick Extension was signed, extending the deadline for Prestwick only to close by May 31, 2017. (*Id.* at 4–6.)

In response, HWLC argues that, generally, there are issues of fact as to the termination of

the agreements. (Pl. Resp. at 6–9.) HWLC alleges that existence of the Second Amendments signed in January 2017 create an issue of material fact as to when the agreements terminated. (*Id.* at 6.) Such argument is unavailing. For a disputed fact to be deemed "material" for purposes of denying summary judgment, it must affect the outcome of the claim. *Anderson*, 477 U.S. at 248. The Second Amendments do not meet that standard.

First, the Second Amendments are void under their own terms. The Second Amendments both state: "This Amendment is void and of no effect if it is not signed by the Buyer and Seller within 72 hours from the time it was sent by Buyer to Seller and or his representative." (Doc. No. 43-3 at 2; Doc. No. 43-4 at 2.) Neither of the Second Amendments are signed by the Buyer. (*Id.*) Thus, they are "void and of no effect."

Even if they were not void, the Second Amendments do not change the ultimate result, which is that *the closing deadlines have passed*. The Second Amendments each incorporate the terms of the Original Purchase Agreements and the Amendments, and state that those incorporated agreements "are unchanged except as expressly amended hereby." (Doc. No. 43-3 at 1; Doc. No. 43-4 at 1.) The Second Amendment for Prestwick states: "Seller extends closing date to February 28, 2017." (Doc. No. 43-4 at 1.) Thus, it extended the closing deadline for Prestwick from December 31, 2016 (as set forth in the Prestwick Amendment) for two months. The Second Amendment for Raintree states: "The Closing date under the Purchase Agreement for Raintree shall be adjusted to allow commencing the twelve month period of closing from the date of closing Prestwick." (Doc. No. 43-3 at 1.) The "twelve month period of closing" refers to the twelve-month period established by the Raintree Amendment, which granted HWLC the option to seek two, six-month extensions (*i.e.* one, twelve-month period) to close on the Raintree purchase, but *only if* HWLC closed Prestwick by its closing deadline. Nothing in the Second

17

Amendments changes the parties' agreement that, if HWLC did not close on Prestwick by its agreed-upon closing deadline, then such failure "shall negate any rights that Purchaser has to purchase Raintree." (Prestwick Amendment, Doc. No. 36-4 at 2.)

HWLC does not dispute that it did not close Prestwick by the February 28, 2017 deadline in the Second Amendment. Thereafter, the only agreement entered by the parties was the Final Prestwick Extension, which set forth a May 31, 2017 closing deadline for Prestwick. It did not mention Raintree. It was not signed by Raintree. It had nothing to do with Raintree. And, even if it did, the undisputed fact remains that HWLC did not close Prestwick by May 31, 2017, so any right for HWLC to purchase Raintree was "negate[d]." Thus, all the closing deadlines have passed, and the Raintree Defendants are under no obligation to sell either golf course to HWLC.

HWLC then argues that the affidavit of Attorney Sicuro in May 2017 demonstrates that "the Agreements were still in full force and effect." (Pl. Resp. at 7.) This is untrue. Attorney Sicuro's affidavit does not refer to "Agreements"; instead, it refers to a single transaction. (*See, e.g.*, Sicuro Aff., Doc. 43-7 at ¶ 3, "a contract to purchase real estate"; *id.* at ¶ 4, "[t]he contract.") Indeed, the only transaction referred to in the affidavit is that for the sale of Prestwick, a transaction which Attorney Sicuro stated was "contractually scheduled to be closed as of May 30, 2017." (*Id.* at ¶ 6.) Attorney Sicuro does not refer to Raintree and certainly does not affirm that a contract to purchase Raintree was "in full force and effect" as of May 2017. Nor does he state that any contractual obligation existed to close Prestwick after May 30, 2017.

HWLC also argues that the Raintree Defendants' conduct in mid-2017 in working with HWLC demonstrates that the contracts did not expire. (Pl. Resp. at 12–14.) Such argument again misses the mark. HWLC refers to conduct that occurred in March and May 2017, but such was before the Final Prestwick Extension expired. (*Id.* at 3, 13.) It does not demonstrate that the

Raintree Defendants agreed to another extension of closing deadlines. HWLC also refers to conduct in June 2017, when it alleges it first learned of debt forgiveness between Prestwick and its holding company. (*Id.* at 13–14.) However, such conduct — *i.e.*, raising questions about financial information — does not suggest that the parties had agreed, orally or in writing, to extend the closing deadline, especially given that each time the prior closing deadlines passed, the parties executed written amendments to extend the closing dates. None of the case law cited by HWLC supports finding otherwise.

Finally, HWLC argues that "there is no evidence of a termination letter sent or served in accordance with the Agreements." (Pl. Resp. at 8–9.) That is irrelevant. HWLC does not dispute that it acknowledged termination of the parties' agreements on February 27, 2017, in response to an email from the Raintree Defendants' transactional counsel. (Partial MSJ at 4–6.) HWLC itself referred to such email as a "Notice to Terminate," yet now attempts to reverse course. (*Id.* at 4; Rainieri Dec. at ¶ 11, Ex. F.) Regardless, compliance with any notice-of-termination requirement is not required now (after the closing deadlines have passed), as such termination provisions address situations where the closing deadline has not yet passed, and one party seeks to terminate the transaction before closing. (*See, e.g.*, Original Prestwick Agreement, Doc. No. 36-2 at 8, 13, 18–19.)

The foregoing grounds for summary judgment aside, JWLC"s claims of breach are barred by the terms of the parties' agreement. Both of the Original Purchase Agreements state:

> No claim for breach of any representation or warranty of Seller
> shall be actionable or payable if the breach in question results from
> or is based on a condition, state of facts or other matter which was
> known to the Purchaser prior to Closing.

(Partial MSJ at 15.) HWLC's allegations of breach are all based on alleged discrepancies in

financial information and representations provided by the Raintree Defendants, and all such information and representations were provided to HWLC "prior to Closing," as closing has never occurred. (*Id*. at 14-15.) Thus, HWLC's claims of breach are barred.

HWLC does not refute that its claim of breach is barred for this reason, or even address it. Summary judgment is thus proper.

HWLC also does not contest that specific performance is unattainable as a remedy for the Raintree Defendants' alleged breach of contract. In its opposition to the motion for partial summary judgment, HWLC instead asserts that "[w]hile there is a ref[er]ence to specific performance in the demand," "no claim for specific performance is being sought." (Pl. Resp. at 9.) Thus, HWLC has abandoned its request for specific performance. To the extent that HWLC has not abandoned its request for specific performance, summary judgment is awarded on this point to the Raintree Defendants.

As a final matter, the Raintree Defendants are entitled to summary judgment on their declaratory judgment Counterclaim. As discussed, the Raintree Defendants have demonstrated that, because the closing deadlines for the various agreements have expired and closing did not occur, the Raintree Defendants are entitled to a declaratory judgment that the parties' agreements are terminated, null, and void, and the Raintree Defendants are not under any obligation to sell either the Raintree course or Prestwick to HWLC. (Partial MSJ at 17.)

HWLC states in response that it does not seek specific performance of the Raintree contract, and instead only seeks damages in this case. (Pl. Resp. at 9.) Thus, it appears to the Court that HWLC does not oppose the Raintree Defendants' request for declaratory judgment that they are under no obligation to sell either golf course to HWLC.

To the extent HWLC does oppose the Raintree Defendants' request for declaratory

judgment, HWLC's only argument is, generally, that under the terms of the Original Purchase Agreements, the Raintree Defendants are limited by the remedy provision stating that if the sale is not "consummated due to Purchaser's default, Seller shall be entitled, as its sole remedy, to terminate this Agreement and received [sic] the Deposit as liquidated damages." (*Id*. at 15.) Thus, HWLC appears to be arguing that the Raintree defendants cannot seek declaratory judgment, as their "sole and exclusive remedy is to retain the deposits, nothing more." (*Id.*)

HWLC's argument is misplaced. This Court has the power to issue a declaratory judgment to "declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). This declaratory relief is available whether or not further relief is or could be sought. (*Id.*) Thus, HWLC's argument that declaratory judgment is unavailable, along with its other arguments, lacks merit. Summary judgment is awarded to the Raintree Defendants on their request for declaratory judgment.

## IV.     CONCLUSION

For all of the reasons discussed, the Court grants the motion for partial summary judgment (Doc. 36.) The Court awards partial summary judgment in favor of the Raintree Defendants and against HWLC on: (1) Count One of HWLC's Complaint and (2) Count One of the Raintree Defendants' Counterclaim.

**IT IS SO ORDERED.**

 s/*John R. Adams*
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE

**DATED**: 3/28/19